SHELL PETROLEUM CORPORATION *v.* FORD.

1. LANDLORD AND TENANT—CANCELLATION OF LEASE—CONTRACTS—
   SEVERABILITY.

   Where oil company leased oil station for definite term and
   employed lessor to run it under contract entitled ''Lease and
   Contract of Employment,'' with provision that employment
   might be terminated upon notice by either party, but no
   provision for termination of lease, termination of employ-
   ment by lessor did not terminate lease.

2. EQUITY—JURISDICTION—INJUNCTION—ADEQUATE REMEDY AT LAW
   —LANDLORD AND TENANT.

   Where damages to lessee of oil station by unwarranted can-
   cellation of lease and turning station over to competitor are
   not determinable with any degree of accuracy, it has no ade-
   quate remedy at law, and therefore equity court has jurisdic-
   tion to restrain interference by lessor and competitor with
   lessee's possession under its lease.

Appeal from Ingham; Carr (Leland W.), J. Sub-
mitted April 9, 1931.   (Docket No. 30, Calendar
No. 35,427.)   Decided June 25, 1931.

Bill by Shell Petroleum Corporation, a Virginia
corporation, against Frank E. Ford and Lansing Oil
Company, a Michigan corporation, to enjoin inter-
ference with plaintiff's possession of an oil station
under lease from defendant Ford.   Bill dismissed.
Plaintiff appeals.   Reversed.

*Thompson, Mitchell, Thompson & Young* and
*Shields, Silsbee, Ballard & Jennings* (*Ronald J.
Foulis,* of counsel), for plaintiff.

*Kelley, Sessions & Warner,* for defendant Ford.

*Hayden, Hubbard & Rathbun,* for defendant Lan-
sing Oil Company.

McDONALD, J. The bill in this case was filed against the defendants for injunctive relief. From a decree of dismissal the plaintiff has appealed.

The plaintiff is engaged in the business of selling motor oils, gasoline, and other petroleum products at retail through gasoline stations. The defendant Ford had a 10-year lease from the fee owner of property located at the corner of Butler and Saginaw streets in the city of Lansing, on which he was erecting a gasoline station. On September 2, 1927, he made a lease and employment contract with the plaintiff for the lease of the premises for a term of five years with the privilege of renewal for a like term and for his employment by the plaintiff to superintend the operation of the service station in the sale of plaintiff's products exclusively with the right to deal in automobile accessories on his own account. The rent was fixed at $1,500 a year payable in equal monthly installments. Mr. Ford required $3,500 to complete his payments for the building erected on the premises. He borrowed that amount of the plaintiff and gave as security a mortgage covering the building and leasehold. In carrying out the transaction, the 10-year lease was assigned to the plaintiff and a sublease for the same term was given back to Ford. It was understood that when the mortgage was paid the lease should be reassigned and the sublease canceled. Under this arrangement, Mr. Ford continued in the plaintiff's employment selling its products exclusively until May 15, 1930, when he notified the plaintiff by letter that, effective in 30 days, he would terminate his employment and cancel the five-year lease. The reason for this notice was that Ford had made a better contract with the Lansing Oil Company. This contract provided that Ford should terminate his em-

ployment with plaintiff, cancel its lease, give a lease to the Lansing Oil Company and act as its agent in the sale of petroleum products. It also provided that the Lansing Oil Company should deposit $3,500 in escrow for the purpose of enabling Ford to discharge the plaintiff's mortgage and secure a reassignment of the original lease. The plaintiff conceded Ford's right to terminate his employment, but denied his right to cancel the lease. It refused a tender of the amount due on the mortgage, and gave him notice to vacate the premises. Since that time Ford has continued in possession selling the products of the Lansing Oil Company. The plaintiff filed this bill to restrain him from withholding possession, from removing any of the equipment, and from selling any products other than those' of the plaintiff, and to restrain the Lansing Oil Company from inducing Ford to breach his contract and from interfering with the plaintiff's rights thereunder.

In his answer, Ford denied that the plaintiff was entitled to equitable relief, and offered to furnish a bond in the penal sum of $5,000 to pay any damages it might recover in an action at law.

On the hearing, the trial court dismissed the bill as to defendant Lansing Oil Company, and decreed the defendant Ford should file with the clerk within 10 days the bond offered by him; and, in default thereof, the injunction should issue against him as prayed.

The rights of the parties depend upon whether the lease of September 2, 1927, is still in force. Under that lease Ford was the lessor. Plaintiff was the lessee in possession. Ford's occupancy of the premises was as an employee in charge of the sale of the plaintiff's products. He terminated his employment, as he had a right to do, but his notice was not

effective to cancel the lease. There is no provision in the lease in reference to its cancellation. The only cancellation clause refers to the employment. It reads:

"The employment herein agreed upon may be terminated by either party upon thirty days written notice to the other party."

The instrument is entitled "Lease and Contract of Employment." It is Mr. Ford's contention that they constitute but one contract, inseparable as to the lease and employment. There is nothing in the instrument to indicate that the continuance of one depends upon the continuance of the other. The lease was for a definite term of five years. The employment might be terminated whenever Mr. Ford desired it, or whenever his services were not satisfactory to the plaintiff. The plain language of the instrument leaves no doubt as. to the intention of the parties. The 30-day notice which Mr. Ford gave the plaintiff did not cancel the lease. At that time it had more than two years to run. Ford terminated his employment, and thereafter his occupancy of the premises was unlawful. The plaintiff had a right to possession for the exclusive sale of its products.

The question is whether the court has jurisdiction to protect the plaintiff's rights by mandatory injunction.

This station was one of a chain of stations established by the plaintiff throughout the country for the sale of its products. It had been operated about two years before this controversy arose. It had the benefit of a nation-wide advertising of the Shell products. It was building up a trade and good will, the loss of which cannot be compensated for in

money. The damages sustained by the unwarranted action of Mr. Ford in ousting the plaintiff and giving over the station to a business competitor cannot be measured by any known standard. The quantity of petroleum the plaintiff might have sold if it had been allowed to continue the business cannot be determined with any degree of accuracy. Inasmuch, therefore, as its damages are impossible of ascertainment, it has no adequate remedy at law. Equity alone can fully protect its rights. It is entitled to a decree restraining Mr. Ford from interfering with its possession of the premises and its right to the exclusive sale of its products at that location.

As to the other defendant, Lansing Oil Company, the evidence does not sustain the charge that it unfairly and fraudulently induced Mr. Ford to break his contract with the plaintiff. But it is not necessary to discuss that question, for on other grounds the plaintiff is entitled to injunctive relief against the Lansing Oil Company. It has a lease and contract with Ford similar to that which he had with the plaintiff. Its products are being sold at this station where only the plaintiff has a right to do business. It is engaged with Ford in unlawfully interfering with the plaintiff's possession, and should be enjoined.

The decree of the circuit court is reversed, with costs to the plaintiff. A decree will be entered in this court in accordance with this opinion.

BUTZEL, C. J., and WIEST, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.