[Sac. No. 4549. In Bank.—January 30, 1933.]

ASSOCIATED OIL COMPANY (a Corporation), Appellant, v. HAROLD MYERS et al., Respondents.

David E. Snodgrass, Daniel W. Hone and Chenoweth & Leininger for Appellant.

Jesse W. Carter and Glenn D. Newton for Respondents.

THOMPSON, J.—On February 23, 1929, the defendants were the owners of an automobile service station and the ground upon which it was situated at the corner of Market and Lincoln Streets in Redding, the real property extending fifty feet along Market Street and thirty feet along Lincoln. On that day they executed a lease of the property to plaintiff, excluding only a residence thereon, for the term of three years commencing March 1, 1929, and terminating March 1, 1932, with the option to the plaintiff to extend the term to March 1, 1934, and thereafter until canceled by a written notice of ninety days given by either of the parties. The lease recited that plaintiff intended to use the property for handling and advertising its petroleum products and that it should have the exclusive right to use all space for advertising purposes and the "exclusive right to keep or store gasoline in, or about said property". The lessee agreed to pay lessors as rental three cents per gallon for all gasoline sold to lessors for resale from said premises during the preceding month, in accordance with the provisions of a license agreement executed contemporaneously with the lease, which rental was, however, in no event to be less than ten dollars per month. By the license agreement, of the same date, the plaintiff gave the defendants "the right to use" the leased premises "on the conditions and solely for the purpose . . . " of "reselling therefrom to consumers petroleum products purchased" by the defendants from the plaintiff "and/or Tide Water Oil Sales Corporation . . . together with one other brand of Eastern lubricating oil". It was further agreed that the defendants should purchase from the plaintiff all gasoline "handled at or in connection with the property at the regular posted

price to resellers or retailers''. On June 1, 1929, the parties executed an agreement of modification which somewhat changed the basis of the cost price of the gasoline to defendants and increased the rental of the premises to the plaintiff from three cents to four cents per gallon of gasoline, but did not otherwise affect the agreements.

The plaintiff brought this action, not only alleging the facts which we have already recited but also setting up that solely for the purposes noted the defendants took possession of the premises and until August 23, 1930, the products of plaintiff were sold to consumers thereof and a large demand therefor and a substantial goodwill established, there being employed for advertising purposes in connection therewith the color, signs, symbols and lettering used by the plaintiff throughout the Pacific Coast territory. It was also alleged that the plaintiff is a producer and refiner of petroleum products and has, at all of the times mentioned, advertised its products throughout the Pacific Coast by means of such advertising at its stations and that there is a substantial value in having its products advertised exclusively on the property leased by it from the defendants. Further, it was alleged that in contravention of their agreement the defendants have used the property since August 23, 1930, for the purpose of selling gasoline purchased from vendors other than plaintiff or the Tidewater Oil Sales · Corporation and have refused, over the objections of plaintiff, to cease; that on the same day in August the defendants changed and altered the advertising theretofore displayed; that such changes confused the public and have greatly and irreparably injured the plaintiff and will continue to do so unless the defendants be restrained and enjoined from using the property for unauthorized purposes.

The defendants interposed a demurrer to the complaint, which was sustained without leave to amend. From a judgment of dismissal the plaintiff prosecutes this appeal.

The action of the trial court was based, as indicated by a written opinion, upon three theories, as follows: (1) Equity will not restrain one from violating a contract calling for personal service, especially where the service to be performed requires special knowledge, skill or ability, (2) the agreements lack a mutuality of remedy and, (3) the agreements are in restraint of trade and therefore void. The

respondents not only urged the foregoing reasons as support for the judgment but also say that the agreements are not just and reasonable; that they received no adequate consideration for them; and that the plaintiff had an adequate remedy at law.

It must be conceded, if there be need for construction, that respondents' preliminary argument to the effect that the instruments of lease and license should be read together is sound, for which proposition of law nothing more need be cited than section 1642 of the Civil Code. It does not necessarily follow, however, that the two agreements constitute but one contract (*Malmstedt* v. *Stillwell*, 110 Cal. App. 393 [294 Pac. 41]), or that appellant acquired no rights in the property which it is entitled to have protected. As we read the contracts it cannot be seriously doubted that the parties intended that plaintiff should have a leasehold interest in the demised premises, nor can it be seriously questioned that the contracts were prepared and executed in the form in which we find them with the intent and for the express purpose of enabling the appellant to determine the use to which the property should be put during the term of the lease. The instruments declare such to be the purpose. We are therefore in the same position, assuming for the moment that the lease agreement was valid, as though the appellant were the owner of the real property and had licensed respondents to enter thereupon for the purpose set forth in the license agreement.

With such a basis from which to proceed we may turn to examine the specific objections lodged by respondents to the relief demanded by appellant. First of all it is argued that the agreements lack mutuality of remedy and obligation. The argument advanced by respondents to support this assertion is based upon the proposition that the lease granted appellant the right to cancel upon giving a ninety days' written notice. The authorities are unanimous to the effect that when the contract is terminable at the will of the plaintiff he may not have relief against the defendant. But to assert, as a matter of equity, that a lease for a three months' period is of no value and entitled to no protection is, we think, going further than the doctrine warrants. Furthermore, it is a recognized rule of equity that where, as here, ''the reciprocal obligations of the

parties to the contract are concurrent, the continuance of the obligation of each to perform his part being dependent upon continued performance by the other, any material injury which otherwise might be sustained by the defendant, of whom performance is required, in consequence of his not having an efficient remedy for coercing future performance by the plaintiff, is effectually avoided by making the defendant's obligation to continue performance dependent upon a continuance of performance by the plaintiff". (*Montgomery Traction Co.* v. *Montgomery L. & W. P. Co.*, 229 Fed. 672.)

However, there is a more serious question in the contention itself and cognate to the second and third arguments advanced by defendants, to wit: That the agreements are not just and reasonable to respondents and call for the personal services, skill and judgment of respondents. The view we entertain concerning these propositions makes the solution of one the solution of all. It is to be remembered that the plaintiff did not seek to compel the respondents to remain on the property and sell its products. It simply sought to restrain the sale of other products and the display of other advertising. In *Shell Petroleum Corp.* v. *Ford,* 255 Mich. 105 [237 N. W. 378], the defendant leased a plaintiff a parcel of property for purposes, the same as here, and entered into an agreement by which he was employed by plaintiff to superintend the operation of the station. Some time later he attempted to terminate his employment and cancel the lease. The station was one of a chain of stations established by the plaintiff for the sale of its products. The plaintiff brought its action to enjoin the defendant from interfering with its possession and its right to the exclusive sale of its products. In that case, as here, the trial court entered a judgment of dismissal. The Supreme Court of Michigan reversed the decree, saying: "This station was one of a chain of stations established by the plaintiff throughout the country for the sale of its products. It had been operated about two years before this controversy arose. It had the benefit of a nation-wide advertising of the Shell product. It was building up a trade and good will, the loss of which cannot be compensated for in money. The damages sustained by the unwarranted action of Mr. Ford in ousting the plaintiff and giving over the station to a busi-

ness competitor, cannot be measured by any known standard. The quantity of petroleum the plaintiff might have sold if it had been allowed to continue business cannot be determined with any degree of accuracy. Inasmuch, therefore, as its damages are impossible of ascertainment it has no adequate remedy at law.'' It is to be observed that the court in the case from which we have just quoted took occasion to point out that while the instrument was entitled "Lease and Contract of Employment" there was nothing to indicate that the continuance of one depended upon the other and that "the employment might be terminated whenever Mr. Ford desired it, or whenever his services were not satisfactory to the plaintiff". Assuming that the respondents had the right to discontinue their individual efforts at the station, would not the appellant have the right, so long as they continued to serve, to restrain their interference with its possession of the property by selling other products and displaying other advertising at its station? Similarly, would not equity protect respondents in their limited possession so long as they conformed to the terms of their agreement? If we are to accept the authority from the jurisdiction of Michigan, as persuasive of the point, both questions must be answered in the affirmative. We are induced not only by the logic of the situation but also by the reasoning in *General Petroleum Corp.* v. *Beilby,* 213 Cal. 601 [2 Pac. (2d) 797], to accept the answers indicated as being correct. From which it follows that the arguments heretofore noted as advanced by respondents must fall. ■ It is urged, however, that respondents have not received an adequate consideration, i. e., that the lease agreement is not supported by an adequate consideration. It will be remembered that the lessor was, by the first agreement, entitled to receive three cents per gallon of gasoline sold to lessor for resale during the preceding month, which by the modification was increased to four cents, and in no event was the rental to be less than $10 per month. We see no occasion, as is suggested by respondents' brief, to discuss the two standards agreed upon by the parties, the one in the original lease and the other in the modification agreement for determining the price which respondents should pay appellant for gasoline, for the reason that the lease determined what should be allowed as rental irrespective of prices which might vary.

Nor do we see how it is possible, in the absence of any evidence whatsoever, to determine that the consideration for the lease agreement was inadequate. Respondents have cited authority to the effect that in an action for specific performance it is necessary for the plaintiff to allege facts showing that the contract sought to be enforced is, as to the defendant, fair and just and supported by an adequate consideration, which is a well-recognized rule of pleading in such cases. But they have cited no case and we know of none which says a similar allegation is required in an action such as the one here. Fundamentally, if the complaint fails to disclose a situation which calls for the interposition of the equitable arm of the court or discloses a situation where it would be inequitable for the court to act, it is fatally defective. But as we have already observed—on the face of the pleading the lease agreement appears to be supported by a sufficient consideration.

We therefore pass to the question of whether the agreements are in restraint of trade. Section 1673 of the Civil Code says: "Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by the next two sections, is to that extent void." The exceptions noted in the succeeding sections do not comprehend the situation of the instant case. Respondents not only rely upon the quoted provision but also upon those authorities which declare that contracts which are designed to create monopolies and injuriously deprive the public of the benefits of trade resulting from free and unrestricted competition are void. In this category we may place all those authorities which, following the case of Miles Medical Co. v. John D. Park & Sons, 220 U. S. 373 [31 Sup. Ct. Rep. 376, 55 L. Ed. 502], declare that manufacturers of patented articles may not make valid contracts with the wholesalers by which the retail price is to be fixed and determined. We may also add the cases of Santa Clara Val. M. & L. Co. v. Hayes, 76 Cal. 387 [18 Pac. 391, 9 Am. St. Rep. 211], and Morey v. Paladini, 187 Cal. 727 [203 Pac. 760], in both of which cases the design and intent of the contract was to secure a complete monopoly and stifle competition in the article which was the subject of contract. It is obvious that we are not dealing with a situation comparable to those cases.

However, *Coombs* v. *Burk,* 40 Cal. App. 8 [180 Pac. 59], comes nearest to our problem. In the Coombs case it was held that a contract whereby a gas company furnished a number of gas-burning appliances in consideration of an agreement on the part of the purchaser and consumer to purchase from the gas company all of the gas which might be used at the place where the articles were installed, and in case of his failure so to do to pay the company a designated sum for the equipment was illegal and void and in contravention of public policy. For the reasons hereafter stated we do not deem this case to be controlling. In the case of *Fidelity Credit Assur. Co.* v. *Crosby,* 90 Cal. App. 22 [265 Pac. 372], which, at first blush, seems to announce a similar conclusion, it will be found that counsel conceded the point and argued that the particular offending provision might be severed from the remainder of the contract, which latter point was the one passed upon by the court.

On the other hand we are confronted by authorities from other jurisdictions where contracts of the very nature here involved were declared not to be in restraint of trade. They are *Cox, Inc.,* v. *Humble Oil Refining Co.,* (Tex. Com. App.) 16 S. W. (2d) 285, *Wiseman* v. *Dennis,* 156 Va. 431 [157 S. E. 716], and *McQuaig* v. *Seaboard Oil Co.,* 96 Fla. 275 [118 South. 424]. In addition we are referred to the following cases, where, while the specific question of whether the contracts were in restraint of trade was not discussed, it was held that the contracts were enforceable and the rights arising therefrom the subject of equitable cognizance: *Standard Oil Co.* v. *O'Hare,* 122 Neb. 89 [239 N. W. 467], *Abshire* v. *Smith,* 86 Ind. App. 354 [156 N. E. 408], and *Shell Petroleum Corp.* v. *Ford,* 255 Mich. 105 [237 N. W. 378]. Our attention is also directed to *Grogan* v. *Chaffee,* 156 Cal. 611 [105 Pac. 745, 747, 27 L. R. A. (N. S.) 385], and *Ghirardelli Co.* v. *Hunsicker,* 164 Cal. 355 [128 Pac. 1041], in which cases this court determined that a manufacturer of a product which he claimed to be superior to others, and which constituted only a small percentage of the entire product available on the market might impose by contract a fixed minimum retail price upon the article which would not be in restraint of trade and which would be enforceable. In the Grogan case the following was

quoted from *Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 396 [9 Sup. Ct. Rep. 553, 32 L. Ed. 979] : ''Public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than protection to the other requires, the contract may be sustained. The question is whether, under the particular circumstances of the case, and the nature of the particular contract involved in it, the contract is, or is not unreasonable.'' It requires no argument to demonstrate that appellant had the right to decline to sell any but its own product upon the leased property. We can see nothing unreasonable in requiring the licensees to do the same thing. The public interest is not involved and competition is not stifled. In no way does the agreement attempt to limit production or fix the price of the commodity involved.

◼ Sufficient has been said to indicate that the appellant is without an adequate remedy at law. The quotation from *Shell Petroleum Corp.* v. *Ford, supra,* is apropos, in addition to which the following apt statement from *Standard Oil Co.* v. *O'Hare, supra,* may be set down. ''It needs no argument to show that a remedy at law would not afford appellant as complete, prompt and efficient a remedy for the destruction of its business and its personal property therein contained, or in the loss of its going business, as would be furnished by a court of equity in preventing such an injury. Any defense which the appellee may have to the petition must be pleaded.''

Judgment reversed.

Seawell, J., Shenk, J., Curtis, J., Preston, J., and Waste, C. J., concurred.

Rehearing denied.