## STANDARD OIL CO v CARR et

Ohio Appeals, 2nd Dist, Shelby · Co

No 101.   Decided March 5, 1937

Frank H. Marshall, Sidney, Holliday, Grossman & McAfee, Cleveland, (George Hazlitt, of Counsel), for plaintiff-appellant.

H. K. Forsyth, Sidney, and S. J. Hetzler, Sidney, for defendants-appellees.

### OPINION

By HORNBECK, J.

This is an appeal on questions of law and fact. The suit was to enjoin the defendants from interfering with the plaintiff's right to possession of certain premises, described in a lease between the parties, upon which was a service station.

The case is submitted on a transcript of the evidence as presented to the Common Pleas Court. The injunction was denied. The cause is heard de novo.

The material facts are that the plaintiff was engaged in the sale of gasoline, motor oils and other products which are distributed to its stations throughout the country.

On the 15th day of January, 1935, the parties entered into a lease, plaintiff's Exhibit A, for the premises described in the petition, consisting of 1.85 acres of land, more or less, on Main Street in the village of Port Jefferson, Shelby County, Ohio, "together with all buildings, improvements and equipment thereon or connected therewith, which property and equipment is now being operated or is intended to be operated as an automobile filling station." On the same date the same parties entered into an Agent's Agreement, plaintiff's Exhibit B.

The rental to be paid for the premises was a minimum of $1.00 per month, ½c per gallon per month if the sale of gasoline exceeded 1500 gallons and an additional ½c "per gallon upon each gallon of gasoline sold on the premises during the months of the year in which the actual sales of gasoline thereon were less than 1500 gallons, less the sum of $1.00 previously paid for each such month."

There were covenants and agreements carried into the lease under twelve clauses, defining the rights and obligations of the parties. The fourth clause provided in part:

"Lessee shall have the privilege and option of extending this agreement for four additional periods of one (1) year each upon the same terms and conditions as herein set forth, the first of such periods to begin on the expiration of the initial period herein granted and each successive period to begin on the expiration of the period immediately preceding;"

In the blank space appearing under clause 4, there was inserted in the lease plaintiff's Exhibit A, in handwriting, the word "four," making the lease to read that the agreement was for four additional periods of one year, each, etc.

The lease further provided that the option for the additional periods would be considered as having been exercised unless the plaintiff gave notice in writing to the defendants at least fifteen days before the additional period would otherwise commence of plaintiff's intention not to exercise the extension privilege.

There is a provision under clause 2 for cancellation and termination of the lease by the plaintiff upon fifteen days' written notice to the defendants of intention so to do. It is further provided that the plaintiff shall at all times during the term of the lease have the peaceful and quiet enjoyment and possession of the premises without any manner of let or hindrance from the lessor or any person or persons lawfully claiming the premises or any part

thereof and the lessor agrees to handle plaintiff's products exclusively.

The lease further provides that the Standard Oil color scheme of the plaintiff upon the buildings, structure or equipment upon the premises shall be the colors red, white and blue and lessors agree not to sell or offer for sale or to permit to be sold or offered for sale upon the premises any motor vehicle, fuel or petroleum products other than those manufactured by the plaintiff, so long as any building, structure or equipment on the premises is painted in the standard colors of the plaintiff.

It appears that on or about December 11, 1935, the defendants ceased to operate the service station for and on behalf of the plaintiff, notified it of their purpose not to recognize any of the rights of the plaintiff under the lease after January 6, 1936, and on or about that time began to sell the gasoline and oil of another company, using the equipment of plaintiff in making such sales and continued the use of said premises without changing the color scheme on the building or removing a Sohio sign which was on or about the premises.

It is further averred that in January, 1936, plaintiff made demand upon the defendants that either they cease to violate the terms of the lease and the agency agreement within three days from the receipt of the notice of said demand or surrender and release possession of the service station premises to the plaintiff, to which request defendants refused to accede.

The only controversy between the parties respecting the form of the lease arises upon the claim of the defendants that the privilege of four year renewal periods of one year each was not in the instrument when they signed it and therefore must have been inserted afterward.

The plaintiff is insisting on its rights under the renewal clause in the lease and claims right of possession thereunder from January 7, 1936, for one year thereafter.

Subsequent to the notice to the defendants by the plaintiff to vacate the premises or observe the agency agreement, the plaintiff exercised its privilege to cancel and terminate the agency agreement. This agreement, plaintiff's Exhibit B, provided in part that the defendants should act as the authorized agents for the plaintiff at the service station to sell its products, to give their exclusive time and attention to the employment. The privilege was granted to the defendants to handle and deal in confections and tobacco. Commissions to be paid to the defendants were set out,

which on the gasoline was the difference per gallon between the dealer's price quoted and the retail service station price fixed by the plaintiffs. The respective amounts, as of the date of the agreement were 3c per gallon on Ethyl and Sohio X-70 gasoline and 2c per gallon on Renown green gasoline.

It is further provided that:

"It is understood that first party (plaintiff) holds the above service station under a lease and that this agreement, unless sooner terminated, shall terminate in any event with the termination of said lease in any manner."

And further, that the plaintiff may terminate the agreement at any time when in its judgment the defendants have violated any of its terms.

The plaintiff prayed that the defendants be enjoined (a) from interfering with plaintiff's right to possession of the service station premises in the petition described, from withholding possession of said premises, from interfering in any way with the uninterrupted possession by the plaintiff and its rights in and to said premises; (b) from buying, selling or handling in any manner or permitting buying, selling or handling in any manner of any products other than those manufactured and delivered to the premises by the plaintiff during the term of plaintiff's lease.

The defendants claim, first, that the plaintiff was not entitled to the relief sought; that its lease had expired by the terms thereof at the conclusion of one year after its execution because there was no provision in the lease as executed for a four-year extender, one year at a time, and because the lease and the agency agreement were so related in terms and purposes as to make it impracticable to enforce the provisions of the lease against the defendants after the cancellation of the agency contract.

We have examined the pleadings, read the evidence, together with the exhibits and are of opinion that the lease was executed in the form in which it now appears in plaintiff's Exhibit A, and that the provision for an extender for four additional periods of one year each following the termination of the first year term as provided in said lease was an effective and binding contract between the parties.

We can not say that there is such a relation between the terms and provisions of the lease and the agency agreement as that

the provisions of the lease can not be effectuated after the termination of the agency agreement. No such provision is found in either instrument, although the agency agreement does specifically provide that the cancellation of the lease shall terminate the agency agreement. The lease is a separate, distinct agreement between the parties, covering all essential subject matter incident to such agreement. The terms are explicit and the defendants could meet every obligation enjoined upon them without respect to their obligations or those of the plaintiff under the agency agreement. Had third persons instead of the defendants been named, the agents of the plaintiff in the agency agreement, both parties could have, notwithstanding, observed every provision of the lease.

It is undoubtedly true that the defendants and possibly the plaintiff entered into the respective contracts, lease and agency agreement, with the intention that both parties should continue to sustain the relationship therein fixed. However, this can not control against the express provisions of the respective exhibits. They are separate and distinct and bear no controlling relation to each other except in the terms as appearing in the agency agreement, wherein it is provided that the termination of the lease will also terminate the agency agreement.

It is common knowledge that oil companies such as the plaintiff, do frequently and as a matter of business practice, lease premises of an owner or lessee and thereafter put their own agents in possession to operate the service stations.

It is essential to the granting of the relief sought by the plaintiff that it appear that it has no adequate remedy at law. We grant that the fixing of damages by way of loss of profits would be too uncertain and indeterminable as to prevent any fair measure thereof being fixed. We are, however, of opinion that there is a clear, complete and adequate remedy at law available to the plaintiff to accord to it the remedy which it seeks by this proceeding in equity, namely, the legal action of forcible entry and detainer.

The gist of the plaintiff's suit is that it is entitled, as against the defendants, to the possession of the premises described in the petition and thereby to the building, equipment and service station thereon. Nothing appears in this evidence to indicate that if its position is well-grounded the plaintiff is not entitled to all of the premises, that is to say, it does not appear that there is another business conducted by the defendants on the premises, such as a grocery store, a garage or other business, which frequently is maintained in conjunction with a service station.

All of the relief which the plaintiff seeks, namely, the prevention of the use of its equipment, the sale of other products without removing its colors or its sign are incident to its possession of the premises. If and when it secures possession, then all of the other relief sought will follow as a matter of law.

We have examined the cases cited by the plaintiff, namely, Shell Petroleum Corporation v Ford, (Mich.) 237 NW 378, and Standard Oil Company v O'Hare, (Neb.) 239 NW 469. These cases are in point and upon facts similar to those found in this cause, the courts granted injunctive relief, and indicated that in the absence of such action the plaintiffs had no adequate remedy. We do not find that the right of the plaintiffs to maintain an action at law for the possession of the premises in controversy was considered in either of these cases.

Forcible entry and detainer is a legal action specifically designed to determine the right of possession between parties who are in controversy upon the question. The machinery of the law is set up to determine this right and further to quickly and effectively put the successful party into possession.

The equity arm of the court should not be invoked in such a proceeding as this if the relief can be secured at law.

If the injunctive relief requested is granted, it may put the court to the necessity of ejecting the defendants from the service station. The injunction must be a mandatory injunction, requiring affirmative action by the court. This can be accomplished more satisfactorily in an action at law specially created and designed to accomplish the purpose desired by the plaintiff.

We, therefore, find for the defendants upon the ground that there is an adequate remedy at law provided the plaintiff. Judgment for defendant for the costs.

CRAIG, PJ, and BARNES, J, concur.