BAIR *v.* ROOSEVELT OIL CO.

1. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS—ACCOUNTING.

Retention of equity jurisdiction is permitted in controversy between plaintiffs, corporate owner of retail and bulk gasoline stations and the chief stockholder of such owner, who had been appointed defendant wholesale oil company's agent for sale of its products at the stations it had leased, relative to claims of the various parties after cancellation of agency contract where various actions at law would be avoided, relations between plaintiffs and defendant are complicated, an accounting was asked by both parties, a partial one has been had and dispute can be best straightened out in a suit for accounting.

2. ACCOUNTING—AUTHORITY TO EXTEND CREDIT—DISCHARGE—RATIFICATION.

In suit for accounting between plaintiffs, a corporate owner of retail and bulk gasoline stations and principal stockholder thereof who had been appointed defendant wholesale oil company's agent for sale of its products at the stations it had leased, action of defendant in taking over stations upon discharge of its agent and making collections on accounts agent had had no authority to make ratified such accounts only to the actual amount thereof collected and did not render defendant accountable for any additional sum.

3. PRINCIPAL AND AGENT—DISCHARGE—JUSTIFICATION.

Discharge of agent for wholesale oil company which leased several stations from corporation of which he was the principal stockholder *held*, in suit for accounting between the parties, justified by any one of several acts, including failure to report sales of products as agreed, use of lessee's property to pay individual debts as well as those of lessor, and extension of unauthorized credit.

4. ACCOUNTING — DISCHARGE OF AGENT — JUSTIFICATION — PROFITS AND LOSSES.

In suit for accounting between plaintiff agent of defendant wholesale oil company which had leased several stations from plaintiff corporation in which agent was principal stockholder, defendant *held*, not liable to either plaintiff for profits stations should have made after agent was justifiably discharged nor entitled to charge lessor with losses sustained after agent's discharge as any agreement to pay profits to agent who had been so discharged would be without consideration, the two plaintiffs being considered together for purposes of an accounting in this case.

5. FRAUD—EVIDENCE—CANCELLATION OF LEASE—ACCOUNTING.

In suit by plaintiff agent against defendant wholesale oil company which had leased several stations from plaintiff corporation, in which agent was principal stockholder, for cancellation of lease and accounting, fact that defendant may have furnished gasoline of inferior quality *held*, not to entitle lessor to cancel lease on ground of fraud, although possibly a ground for action for damages, nor to entitle agent for credit for inferior gasoline furnished, if such there was.

6. LANDLORD AND TENANT—GASOLINE STATIONS—CANCELLATION OF AGENCY—CONTRACTS—SEVERABILITY.

Lease of retail and bulk gasoline stations from corporation in which plaintiff agent was principal stockholder, agency agreement and third instrument whereby agent, in consideration for appointment as such, undertook to preserve premises in accordance with obligations of lease *held*, not to constitute a single contract, hence, termination of agency agreement did not terminate lease also.

7. SAME—CANCELLATION OF LEASE—PAYMENT OF DEBTS.

In suit for cancellation of lease and accounting, brought against wholesale oil company by corporate lessor and its principal stockholder who had been appointed defendant's agent and subsequently discharged, under agreement respecting termination of lease upon payment of debts due defendant, plaintiffs *held,* never to have been entitled to cancel lease where they were never free from substantial debt to defendant.

8. SAME—ACCOUNTING FOR RENT OF GASOLINE STATIONS.

In suit for accounting between lessor and lessee of retail and bulk gasoline stations, rent *held*, chargeable to lessee only on gasoline sold through such stations during their occupation by its agent, the chief stockholder of corporate lessor, or by itself after the agent's discharge.

Appeal from Eaton; McPeek (Russell R.), J. Submitted October 5, 1937. (Docket No. 8, Calendar No. 37,999.) Decided December 14, 1937.

Bill by Floyd M. Bair and F. M. Bair Oil Company, a Michigan corporation, against Roosevelt Oil Company, a Delaware corporation, for an accounting, injunction and other relief. Cross-bill by defendant against plaintiff Bair for an accounting and other relief. From decree rendered, defendant appeals. Reversed and remanded for further testimony.

*T. Carl Holbrook* (*Arthur T. Iverson,* of counsel), for plaintiffs.

*C. B. Fisk Bangs,* for defendant.

Butzel, J. With the exception of a few shares, Floyd M. Bair owned all of the capital stock of the F. M. Bair Oil Company which with Bair are plaintiffs herein. He or his corporation had used a large quantity of the products of the Roosevelt Oil Company, a Delaware corporation, defendant herein, prior to the day the contracts giving rise to the controversy in the instant case were entered into. The Bair company owed defendant $571.36 for these products. The Bair company owned two parcels of property in the city of Grand Ledge, Michigan, also two in the township of Sunfield, county of Eaton, Michigan, also one in the township of Windsor, and one in the village of West Windsor, all in the same county, also storage tanks, piping, pumps, etc., and other personal property used in the gas and oil business. Bair and his company had had financial difficulties and were quite heavily involved. Bair desired to have his company deal in defendant's products, and defendant, in turn, desired an outlet

for its gasoline. Defendant, however, was unwilling to give Bair or his company a large line of credit as it feared that Bair or his company might be subject to attack by other creditors, and defendant, instead of receiving payment for its goods, would have its products, or the proceeds from the sale of them, seized by legal process to pay other creditors.

After negotiations, three separate documents were drawn. In one the Bair company leased all of its properties, including the personal property, except such as was expressly excluded, to the Roosevelt Oil Company for the term of five years from February 1, 1932, at a rental amounting to one-half cent per gallon for all gasoline sold by defendant through the leased stations, the amount to be paid monthly. The lease contained other covenants usually found in short leases, including an obligation by lessee, at its own expense, to keep the premises in good repair, and at the expiration of the lease to return them in like condition, subject to the usual exceptions.

Contemporaneously with the signing of the lease, defendant appointed Bair its agent to operate its oil stations at the leased premises. The agency contract expressly stated that Bair was to extend credit only to such customers, and in such amounts, as defendant might authorize in writing and not otherwise. It obligated the agent to sell for cash at prices established by the company and to pay the company the amount of those prices less agent's commission at the time of the replenishment of any products previously supplied. It obligated the agent to make reports at the times and in the form and manner required by defendant. It prohibited the agent from incurring any indebtedness in the name of the company and from obligating the company in any manner without first securing written authority from the manager of the district. The agent was to re-

ceive as compensation the difference between the price specified by defendant for the sale of its products and the delivered consignment charge which the company would make from time to time to the Grand Ledge branch, the consignment charge on the Roosevelt regular gasoline to be six cents below the regular price of Standard Red Crown gasoline, as quoted at Grand Ledge, and that on Roosevelt high test gasoline to be five cents below the Standard Red Crown gasoline, as quoted at Grand Ledge. It was agreed that the regular price of Standard Red Crown gasoline was to be the regular price basis fixed for that gasoline by the Standard Oil Company of Indiana in its marketing territory comprising 11 States. It further provided that if the agent transported his own material from the refinery, a transport allowance of three-fourths of a cent per gallon would be made. A statement of other provisions of the contract is not necessary to the decision. While the agency contract is dated February 5, 1932, the trial judge properly held that all three contracts were made at the same time.

The third contract, made by Bair individually with defendant, recited that in consideration of the appointment of Bair, as agent of defendant at Grand Ledge, Michigan, he agreed to perform all those duties of defendant prescribed in the provisions of the lease, obligating the lessee to keep the premises and every part thereof in good condition and to deliver them up in such condition subject to certain exceptions. This contract further provided that defendant, as lessee, should have the right to cancel the lease upon a three-months' notice in writing, either served personally or by registered mail, and that said lessor corporation should have the right of cancellation by a like notice, but on the condition that the lessor's cancellation would not be valid or effective unless or until all sums due the Roosevelt Oil

Company from Bair had been fully paid. Bair is described in this contract as the dominant and controlling stockholder of the Bair Company and it is clear that he intended to bind the corporation. Defendant does not dispute plaintiffs' claim that Bair signed as an agent of the corporation and that plaintiff corporation, upon paying all obligations due, had a right to cancel the lease.

Disagreements arose between defendant and Bair shortly after the contract was entered into. Bair failed to make daily reports of the sales, as he had been directed by defendant. At one time he was a month in arrears in making reports. He applied some of the cash receipts to his own use. A large sale of 5,000 gallons of kerosene was kept off the books for a month through a claimed mistake of Bair's bookkeeper. Bair extended large credits without written consent. He used the defendant's products to apply as payment on some of his personal debts. After some controversy, defendant discharged Bair on June 26, 1932, and claimed that a large sum was due it but agreed to apply net profits from the further operation of the leased premises on Bair's account. It placed one of its own agents in charge of the stations. Bair went into active competition with defendant and operated a gas station as agent for another oil company. Defendant continued to operate the leased stations without objection by Bair until September 29, 1932, and on that date Bair demanded possession orally. Defendant refused to accede to the demand until Bair paid a claimed indebtedness of several thousand dollars. Defendant continued to operate part of the leased premises until 30 days after July 29, 1933, the date of the entry of the decree in this case, and gave up possession on or about September 1, 1933.

On January 3d, the Bair company served notice, dated December 30, 1933, to vacate and on this latter date filed a bill in chancery alleging that the agreements had been obtained by fraud and asking that defendant be enjoined from retaining possession, and also, demanding an accounting and damages for the wrongful discharge of Bair as agent. Defendant denied any fraud and by cross-bill sought an accounting and decree for the amount found to be due it from Bair.

The trial judge found that the three contracts were interdependent and constituted only one contract so that the cancellation of one automatically cancelled the others; and that when Bair was discharged, defendant lost the right to possession of the leased premises; that the contracts were fraudulently induced; that the discharge was wrongful, and that Bair was entitled to profits that should have been made during the time that defendant continued to occupy the premises. The decree awarded possession to the plaintiffs and awarded them the sum of $1,905.71 as the amount due in excess of all obligations due defendant.

Were it not for the fact that defendant filed a cross-bill in which it asked for an accounting and decree against plaintiffs to recover what might be found due, we would unhesitatingly dismiss the bill of complaint. As we shall show, the alleged fraud that plaintiffs attempt to establish in order to justify their cancellation of the lease was that the defendant furnished the Bair Company with inferior products. At most this would give rise to a suit in damages. The plaintiffs further attempt to show that Bair was illegally discharged. If this were true, his remedy also would be a suit at law for breach of contract. If the lease was automatically cancelled by the dis-

charge of Bair, he could bring proceedings at law to regain possession. Inasmuch, however, as an accounting is asked for by both parties and a partial accounting has been had; also since the relations of Bair and the Bair company with defendant are quite complicated and can be best straightened out in an accounting suit, thus avoiding a number of other suits, we permit equity to retain jurisdiction. While Bair and the Bair company are distinct entities, for the purposes of accounting, Bair and the Bair company apparently are willing that they be considered together so that the Bair company would be accountable for such debits or credits, if any, that might in a stricter sense be charged to Bair individually. In view of our decision in this case, defendant certainly cannot object to this method.

Under the pleadings and evidence in this case, various questions arise. Was Bair wrongfully discharged as agent, so that on an accounting he would be entitled to recover a loss of profit as an agent? Did Bair have a right to cancel the lease and regain possession, either for fraud in the inducement of the contract, or because defendant terminated an interdependent contract, the agency contract, or because the lease was terminated under the third agreement above, Bair having paid all sums due defendant?

Bair's conduct was such that defendant was fully justified in discharging him. He seemed to regard the business and defendant's property as his own and himself as the real owner with some obligation to account to defendant when and as he wished. Notwithstanding his obligation to make daily reports, the testimony shows that the sale of 5,000 gallons of kerosene was kept off the books for an entire month. It further shows that Bair used defendant's property to pay off his own private creditors or those of the Bair company. In one case he had a

bad check outstanding and he settled it by turning over gasoline in payment thereof. He paid other creditors of himself and of his corporation by turning over defendant's property to them. The contract strictly enjoined him from extending credit without written authority from defendant. He claimed that defendant's agent, a Mr. Steele, gave him verbal authority to extend approximately $2,000 of credit. This is denied by Steele. There is no claim whatsoever that he ever received written authority to extend such credit. When defendant discharged Bair, it took over some of the unauthorized accounts but stated that it would be accountable only for what collections could be made. After defendant took over the station, approximately $700 was collected on these unauthorized accounts and Bair states that since then he has collected the remaining $1,300. Under its reservation of rights, the action of defendant in taking over the accounts would be a ratification of Bair's unauthorized acts only to the actual amount collected and defendant is not accountable for any additional sum. This is important in the accounting which will be ordered, but it is equally important in showing Bair's total disregard of the contract forbidding him to extend such credits without written authority. Any one of many acts on the part of Bair was sufficient to justify his discharge. The trial judge not only held that the discharge was unlawful but that defendant was also chargeable with the profits the business should have earned after Bair was discharged. Bair is not entitled to profits as damages for his discharge nor can he or the Bair company be credited with the profits or charged with the losses after his discharge. Any agreement to pay him the profits from the station after his discharge would be without consideration as Bair was discharged for good and sufficient

cause and defendant was released from liability to Bair.

The second question before us is whether plaintiffs were entitled to cancel the lease. Did plaintiffs prove any fraud whatsoever on the part of defendant? We have searched the record in vain and find none. At most we find an alleged claim on the part of plaintiffs that the gasoline furnished by defendant was of an inferior quality. If this is true, it might have been the basis for a suit for damages, but not grounds for a cancellation of the contract on account of fraud. Bair is entitled to no credit in this suit for inferior gasoline furnished, if such there was.

Next, was the lease terminated automatically when defendant cancelled the agency contract? The judge was in error in holding that the three contracts constituted a single one and should be construed as such. Contracts of this nature are not uncommon. Gas stations owned by an individual are frequently taken over by a corporation, which employs the individual as agent to operate the stations. The very purpose of the contract in the instant case was to give defendant a lease of the property so that it could not become involved with the creditors of Bair or the Bair company, and Bair's subsequent conduct, in using defendant's products to pay debts of the Bair company, was in violation of the agreement. We need not discuss the many cases from other jurisdictions cited by respective parties inasmuch as the question has been definitely determined in this State. In *Shell Petroleum Corp.* v. *Ford,* 255 Mich. 105 (83 A. L. R. 1413), some of the facts were different from those in this case, but the principle involved was the same. In that case, there was only one instrument instead of three. We held that the

employment contract was not part of the lease. Bair testified that he would not have entered into the lease had it not been for the agency contract. He, however, did enter into the lease and according to his own testimony, was warned by his attorney at the time the contracts were made that he should realize what he was signing as he would be completely ''out of it'' if he were discharged by the Roosevelt Oil Company.

After his discharge, there was considerable altercation, and on August 19, 1932, one of the leased parcels was turned back to F. M. Bair Oil Company and a supplemental contract entered into which provided that this ''memorandum shall not alter any other provisions of the original lease, nor affect the rights, duties or liabilities'' of the parties. The Bair company had unquestionably given the defendant a lease, and while the employment of Bair and his financial difficulties unquestionably were considered, the contracts were separate and not interdependent, and the life of the lease was not contingent upon the retention of Bair as agent.

Lastly, did plaintiffs have a right to cancel the lease by giving notice, having paid all sums due defendant? When plaintiffs brought suit on January 3, 1933, they served a written notice to vacate. Giving this the effect of a notice to cancel the lease, such cancellation would take effect under the third agreement of February 1, 1932, three months after being served, or on April 3, 1933, provided plaintiffs had paid any balance due defendant. However, it is apparent from the record that on April 3, 1933, the plaintiffs were indebted in a substantial sum to defendant, over and above all amounts due plaintiffs. There is such a mass of testimony, reduced from a transcript of some 1,100 pages to 271 closely typed

pages of the record, that it would serve no good purpose to discuss figures further, except to dispose of several disputed items.

Plaintiffs had no right to cancel the lease at any time. Defendant's retention of possession until September 1, 1933, was rightful, under the lease, and it owes the Bair Oil Company only a rental of one-half cent a gallon, as provided therein. Rent should be figured only on gasoline sold through stations occupied by defendant either through Bair as its agent, or by itself after Bair's discharge. No rental should be charged on gasoline distributed through the bulk station at Sunfield returned to the F. M. Bair Oil Company on December 1, 1932, after that date.

The judge made a proper disposition of the charge against defendant for haulage charges and for water glasses used to advertise the station. However, defendant is accountable only for such unauthorized accounts receivable as were actually collected by it. There should be a further accounting with the right to take additional testimony to arrive at the correct figures in accordance with this opinion.

The decree is set aside and the case remanded accordingly, with costs to defendant.

Fead, C. J., and North, Wiest, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.