### JACKSON v. ALPHA PORTLAND CEMENT CO.

(Supreme Court, Appellate Division, Third Department. November 20, 1907.)

1. CONTRACTS—MUTUALITY OF OBLIGATION.

A purported contract between a cement manufacturer and a cement dealer, whereby the dealer, in consideration that he would give the manufacturer's brand the preference in his sales and "push" the same, was to have a lower rate per barrel than other dealers, was void for lack of mutuality, since the dealer did not bind himself to make any sales of cement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 21–23.]

2. SAME—DEFINITENESS AND REASONABLENESS.

Where a cement manufacturer and cement dealer agreed that the dealer should have a lower rate per barrel than other dealers in consideration of his giving the manufacturer's brand the preference in his sales and "pushing" it, and the manufacturer agreed to furnish what cement was necessary for that purpose, and as the dealer should order the same, and no limit was placed on the amount that the dealer might order or sell, the contract was void as indefinite and unreasonable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 10–20.]

Chester and Sewell, JJ., dissenting.

Appeal from Judgment on Report of Referee.

Action by John H. Jackson against the Alpha Portland Cement Company for breach of contract of sale of cement. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Plaintiff for several years has been a dealer in cement and other building materials in the city of Albany, N. Y. The defendant is a manufacturer of building cement, commonly known as "Alpha cement." On December 28, 1901, plaintiff wrote defendant a letter asking the best price that the defendant would make on Alpha cement "during the season of 1902." Some correspondence followed relative to a time when the parties could meet to discuss "the arrangement for 1902." What followed is best told by quoting from the referee's report as follows:

"Pursuant to the correspondence aforesaid, plaintiff and said Dyer, as such representative and agent of the defendant, met at the city of Albany on the 6th day of January, 1902, to discuss the subject mentioned in these letters. During this conversation said Dyer, as said agent and representative, told plaintiff that he wanted to 'push' Alpha cement, and to sell all that he possibly could in this locality, and 'push' it in every way and wherever it was possible to do so, giving it the preference in all cases, and that for so doing the defendant would give the plaintiff five cents better a barrel on said cement than it would to any other dealer therein in the city of Albany. Thereupon defendant did name to plaintiff, in such conversation, a price for such cement which was five cents better than to any other dealer in said city of Albany, which said price is hereinafter stated in a written communication by defendant to plaintiff. Plaintiff thereupon agreed with defendant that, if it would make said price above stated for said cement for the whole of the year 1902, he would agree to 'push' the Alpha cement as much as possible during that time, and would give it such preference, and would sell as much thereof as possible in the locality of said city of Albany. * * * At such conversation there was no amount of Alpha cement specified which plaintiff was to order or sell during the year 1902, but he did agree thereat to sell as much as possible and to 'push' it in every way, and defendant did then and there agree to furnish to plaintiff what cement was necessary for that purpose and as plaintiff should order the same. At the close of said conversation, and on the date thereof, defendant of its own accord, by its said agent, Thomas M. Dyer, prepared and delivered to plaintiff a written paper, of which the following is a copy:

"'Albany Club.

"'Mr. Jno. H. Jackson—Dear Sir: Confirming our conversation of this date, we beg to say, in consideration of your giving our brand the preference in your sales of cement during the year 1902, we agree to invoice Alpha to you, during this year, at the following prices, f. o. b. Alpha, N. J.: In cotton, 95 cents per bbl. In paper, $1.05 cents per bbl. In wood, $1.20 cents per bbl. Cotton bags chargeable and returnable at ten cents each f. o. b. Alpha, N. J.
"'Yours truly,               Alpha Portland Cement Co.,
                                             "'By Thomas M. Dyer.
"'Albany, N. Y., 6th January, '02.'"

The referee also finds that "during the whole of said year 1902 plaintiff did 'push' the sale of Alpha cement, and did during that period sell all that he possibly could of that cement in the locality of the city of Albany and elsewhere, and did 'push' such sales in every way he could and wherever it was possible for him to do so, and did give Alpha cement the preference in all cases, respectively, in his business, as he had so promised and agreed to do with the defendant, as aforesaid." The referee further finds that "during the most of said year 1902 defendant failed, neglected, and refused to furnish plaintiff with anything like as much Alpha cement as he could sell and was selling under and pursuant to his said contract with defendant, and notwithstanding the fact that plaintiff was giving to said Alpha cement the preference in all cases in his said business. By reason of the said failure, neglect, and refusal of the defendant to furnish said Alpha cement to plaintiff under its contract with him and as so ordered by him of it as aforesaid, plaintiff sustained great loss and damage in his said business," which damage is found to amount to $6,707.66, for which amount judgment has been entered against the defendant, with costs. From this judgment, defendant appeals.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Lewis E. Carr, for appellant.

Countryman & Du Bois (Andrew J. Nellis, of counsel), for respondent.

PER CURIAM. The paper of January 6, 1902, standing by itself, lacks mutuality, in that the plaintiff did not bind himself to make any sales of cement, and hence constitutes no valid contract, binding on either party. Chicago & Great Eastern Railway Company v. Dane, 43 N. Y. 240; Commercial Wood & Cement Company v. Northampton Portland Cement Company, 115 App. Div. 388, 100 N. Y. Supp. 960; Rafolovitz v. American Tobacco Company, 73 Hun, 87, 25 N. Y. Supp. 1036. Respondent, however, insists that such writing is but part of the agreement, and that it must be construed in connection with the correspondence and conversations between the parties. Acceding to the respondent's contention in this respect, and construing the arrangement of the parties in the light of all the facts as found by the learned referee, we are of the opinion that such arrangement is too indefinite and unreasonable to be enforced, and that it is therefore for such reason void. Although defendant was to furnish the cement at a fixed and definite price during the entire year, regardless of the fluctuations in the market price, no limit was placed on the amount which plaintiff should order or sell. But he agreed "to sell as much as possible, and to push it in every way," and to give defendant's brand the preference. It is evident that, if the price of cement materially rose in the market, plaintiff, by giving defendant's brand the preference and offering it for sale at less than the market price, could sell without limitation. On the other hand, if the price fell in the market, it became plaintiff's corresponding duty to make the same effort in behalf of defendant, and to undersell all other dealers, thus giving the defendant the same advantage which he could claim for himself if the market price advanced. In either case there was no limit to the amount of sales which the contract required. In the one case the result might prove financially disastrous to the defendant, and in the other case financially disastrous to the plaintiff.

The case is materially unlike Ellis v. Miller, 164 N. Y. 434, 58 N. E. 516, where the agreement as to quantity was limited; the court saying: "We think the obligation of the plaintiff is confined within the limit stated"—viz., to sales of goods amounting to $1,020. So, in Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218, the contract was to furnish coal for the steamers of a certain line. There, although the contract as to quantity was in a certain sense indefinite, it was nevertheless limited by the requirements of such steamers, and it was held that the maxim, "Certum est quod certum reddi potest," applied. There is here no opportunity for the application of such maxim. The opportunities of the parties for the exploitation of their own interests at the expense of each other are as boundless as the demands which might be made for cement, stimulated and quickened by the desire to procure the same at an abnormally low price. To place a logical construction on this arrangement, we must hold that one of these parties had the power to involve the other in financial

ruin, and which of the two would be ruined would depend on the fluctuations of the market price. Such a contract we hold to be void.

Judgment reversed on law and facts, referee discharged, and new trial granted, with costs to appellant to abide event.

JOHN M. KELLOGG, J. I concur in reversal. I think there was a valid verbal contract to furnish cement to the plaintiff f. o. b. Alpha at five cents less than to any other Albany customer, and that the writing related only to the proposed contract to be made in January for supplying plaintiff's regular customers during that year.

CHESTER and SEWELL, JJ., dissent.