[Civ. No. 6346. Second Appellate District, Division One.—February 18, 1930.]

H. W. SCOTT, Appellant, v. CLINE ELECTRIC MANUFACTURING COMPANY (a Corporation), Respondent.

Joe Crail, Harold C. Morton, Claude A. Shutt and Edward A. Penprase for Appellant.

Neice & Packard and Wm. A. Conover for Respondent.

CRAIG (ELLIOT), J., *pro tem.*—This is an appeal by plaintiff from a judgment in favor of defendant rendered after the sustaining of an objection to the introduction of any evidence, at the commencement of the trial, on the ground that the second amended complaint did not state facts sufficient to constitute a cause of action and after the sustaining of an objection to an offer of proof on the ground "that the offer does not prove or tend to prove the case in the pleadings set forth."

For the purposes of said rulings the trial court had to consider as true all of the allegations of said second amended complaint and all of the facts stated in the offer of proof. We therefore state the facts as therein set forth, although the truth of a part thereof was in fact denied by the answer.

The second amended complaint alleges (in substance): That on or about May 11, 1922, plaintiff, an electrical contractor and merchant, in Los Angeles, California, entered into an agreement with defendant, a manufacturer, the portions of said agreement which are herein material, being: "if you are willing to push the sale of our motors in connection with your machines, save where the customer specifies some other make, your acceptance of one copy of this

letter will constitute a motor manufacturer's agreement and will entitle you to contract discounts on all motors purchased by you from us.

"This agreement to remain in force for one year from date of acceptance and to continue in force from year to year unless cancelled by one of the parties hereto thirty days prior to the expiration of any yearly period, it being understood and agreed that the motor prices and discounts will be subject to variations that may be made by the Westinghouse Company and published in their regular price sheets. We shall be glad to fill your orders and give them the attention that will show our interest in your business."

This was signed by defendant. Plaintiff signed thereon: "This proposal is hereby accepted: H. W. Scott."

Said complaint further alleges that plaintiff complied with said agreement and performed all of the covenants and conditions as agreed by him to be performed, and that he did push the sale of defendant's motors in connection with his machines, and that said agreement was fully kept and performed by both parties from May 11, 1922, to June 25, 1925, on which latter date and continuously thereafter defendant refused to further perform under said contract. Plaintiff prayed for $20,000 as damages for said breach of contract.

The offer of proof supplements the said complaint, in part as follows: "that under the contract the plaintiff and defendant entered into a motor manufacturer's agreement and we, in support of the contract and for the purpose of showing what a motor manufacturers agreement is, we desire to show and intend to show that . . . " (stating length of time contract was performed and volume of business done thereunder) "and that plaintiff held himself out as the agent and representative of the defendant, with the consent and knowledge of the defendant; that he did purchase from the defendant articles reaching something like $42,000.00, probably more, that defendant gave discounts . . . " etc.; "that the plaintiff did push the sales of the motors here in Los Angeles for the defendant, and that he did advertise himself and created an enormous expense in doing said advertising; that he has been doing that from May 11, 1922, down to June 25, 1925"; that on June 25th defendant terminated the relation and from that time defendant has refused to

permit plaintiff to represent it as agent and that defendant has established another agency in Los Angeles.

The trial court stated, in reference to the rulings complained of: "the contract as set forth in. the complaint is what is known under the law as a unilateral contract, a one-sided contract where one party was not obliged to do anything and the other parties might, and one that is not binding under the statutes and the law as decided by the Supreme Court."

The alleged errors specified by appellant are:

"I.

"That the court erred in refusing [to permit] plaintiff to introduce evidence in support of the allegations set forth in his second amended complaint.

"II.

"That the decision of the court in refusing to permit plaintiff to introduce evidence in support of the allegations set forth in his second amended complaint was contrary to law.

"III.

"That the judgment entered in the aforesaid cause is contrary to law."

Separate discussions of these three specifications need not be made, for the reason that each is primarily dependent upon the sufficiency of the document set forth in the said complaint, aided, if at all, by the offer of proof, to constitute a contract binding upon defendant from and after June 25, 1925.

From a study of the document set forth in said complaint and of the offer of proof as made, it is apparent that plaintiff agreed only "to push the sale" of defendant's motors in connection with his machines, "save where the customer specifies some other make." He did not agree to buy anything of defendant. The dealings of the parties prior to June 25, 1925, were measured by said document, but from that date the agreement is wholly executory.

A sufficient cause or consideration is one of the essential elements of a contract. (Sec. 1550, Civ. Code.)

"A promise is a good consideration for a promise, provided always that it imposes some legal liability on the person making it. If it imposes none, then it cannot be a good consideration. A promise may be too vague and uncertain

to amount to a consideration for a promise made by the other party." (13 Cor. Jur., p. 329.)

"A purported contract between a cement manufacturer and a cement dealer, whereby the dealer, in consideration that he would give the manufacturer's brand the preference in his sales and 'push' the same, was to have a lower rate per barrel than other dealers, was void for lack of mutuality, since the dealer did not bind himself to make any sales of cement." (*Jackson* v. *Alpha Cement Co.*, 122 App. Div. 345 [106 N. Y. Supp. 1052].)

In the case of *Leach* v. *Kentucky Coal Co.*, (D. C.) 256 Fed. 686, the complaint alleged that plaintiff entered into a contract with defendant for the sale and distribution of defendant's products for five years. "Plaintiff was to introduce defendant's products in the territory in question and to sell as much thereof as possible" and in consideration therefor defendant agreed to sell coal to plaintiff at a certain price. The court therein said, at page 688: "There is no obligation whatever upon plaintiff to order any coal. If plaintiff had refused or neglected to order coal, defendant would not have had any cause of action against him. The case is not one where one party agrees to supply the requirements of another . . . it is an agreement clearly lacking in mutuality."

The case of *Bartlett Springs Co.* v. *Standard Box Co.*, 16 Cal. App. 671 [117 Pac. 934], shows the distinction between the case before us and that class of cases where the purchaser agrees to buy all the commodity agreed to be sold, *which he will need in his business.* Such a contract is held binding because it is held that the purchaser is bound to buy all his needs for the given period of the seller, and to purchase elsewhere would be a breach of the contract.

In the case of *Schimmel* v. *Martin*, 190 Cal. 429 [213 Pac. 33], the Supreme Court had before it a contract between the owner of a pumping plant and an owner of adjoining land for water to be furnished for said land. The court therein said: "The contract is lacking in mutuality. Considered as a contract for the sale of personal property, as the parties to the action treated and considered it, and as the court in effect found it to be, there is clearly no mutuality in the absence of an agreement by the plaintiffs to buy the water offered for sale by the contract. The cases cited

in the brief by counsel for respondents in support of the contention that the contract is mutual were all cases wherein the purchaser agreed in effect to purchase so much of the commodity as he should need in his business during the time specified in the contract. As a matter of course, under the circumstances narrated in those cases the purchaser was legally bound to accept and pay for so much of the commodity as he should need. But in the instant case we are unable to find in the contract any obligation or promise to take or purchase any water at all.''

Assuming the full truth of the allegations of the said complaint and of the statements of fact in the offer of proof and giving to plaintiff the benefit of any possible uncertainty in the construction of said agreement, we conclude that the said complaint, even aided by the offer of proof as to technical meaning of terms used in this contract, does not state facts sufficient to constitute a cause of action for the reason that said agreement lacks mutuality. The agreement therefore is unilateral as to all executory provisions. It is not a unilateral contract of the kind which may be enforced, such as an option founded on consideration, or where the party not bound has fully performed his part of the contract.

The promise to ''push the sale'' of motors is too uncertain and indefinite to constitute an enforceable consideration, and there being no other promise or other consideration on the part of the plaintiff the rulings of the trial court were correct.

The judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.