[Civ. No. 25042.   Second Dist., Div. Three.   Sept. 11, 1961.]

BLACK LIGHT CORPORATION OF LOS ANGELES (a Corporation), Appellant, v. ULTRA-VIOLET PRODUCTS, INC. (a Corporation) et al., Respondents.

474

Tremaine & Shenk and Guy Richards Crump for Appellant.

Young, Zetterberg, Henrie & McCarthy for Respondents.

SHINN, P. J.—In this action for damages for breach of contract, plaintiff appeals from a judgment in favor of defendants.

Ultra-Violet Products, Inc., is a California corporation which manufactures and sells certain products having light properties. On March 30, 1956, it entered into an agreement with plaintiff Black Light Corporation of Los Angeles, hereinafter called Black Light, in which the latter agreed to act as distributor of the products manufactured or sold by Ultra-Violet. The term of the agreement was 10 years with automatic renewal for successive 10-year periods, subject to termination as therein provided. The territory allocated to Black Light was 10 counties of Southern California. On the same day Black Light Corporation of Los Angeles entered into an agreement with Black Light Corporation of America relating to cooperative advertising of the products of Ultra-Violet, which latter was the owner of all the outstanding stock of Black Light of America. In the agreement with Black Light of America, the distributor promised to pay to the former a sum equal to 2.5 per cent of its monthly purchases from Ultra-Violet. An equal sum was to be collected from Ultra-Violet and the same was to be used in a national advertising campaign. Ultra-Violet guaranteed performance of this contract by Black Light of America.

The distributor agreed to maintain an adequate inventory to service all accounts in the territory, to refrain from selling competing products without the consent of Ultra-Violet, to use its best efforts to promote the sales of the product and to pay for the same on the standard terms of Ultra-Violet.

The agreement provided that unless the minimum purchases by Black Light for the remainder of the calendar year 1956 amounted to $20,000 and for each succeeding calendar year $25,000, Ultra-Violet might terminate the agreement as provided in paragraph (16).

This paragraph read as follows: "(16) Termination: Ultra-Violet may terminate this agreement for failure of Distributor to meet provisions of the contract. If Ultra-Violet elects to terminate, it shall give written notice of such election within thirty (30) days following close of the calendar year in which Distributor has not met the provisions of the contract. Distributor may terminate this agreement by giving written notice within thirty (30) days after the close of any calendar year. In the case of such termination by either Ultra-Violet or Distributor, the termination shall be effective at the end of the fourth month following the close of said calendar year."

The parties entered into supplemental contracts later in the year 1956 but the additional undertakings in those contracts are not pertinent to the controversy which developed with respect to the main contract.

On or about January 6, 1958, Ultra-Violet gave notice of termination of the contract, claiming failure of performance by Black Light, and after April 30, 1958, refused to sell to the latter any more of its products.

It is important to note that the defaults of Black Light were specified as failure to maintain an adequate inventory, failure to properly promote the sale of Ultra-Violet's products and breach of its promise not to handle competing products.

The complaint in the present action accused Ultra-Violet of failure to perform under its agreement in that it wrongfully terminated the contract and failed to pay plaintiff its earned commissions. It was also alleged that Ultra-Violet had wrongfully made sales in plaintiff's territory and had failed to expend moneys contributed by plaintiff for advertising expense as it had agreed to do. Black Light of America was also named as a defendant. Defendants answered, putting in issue the material allegations of the complaint and asserting numerous special defenses. Ultra-Violet also filed a cross-complaint seeking declaratory relief and damages for alleged breaches of the contract by Black Light.

During the trial an accord was reached with respect to all claims asserted by Ultra-Violet and Black Light against each

other arising out of transactions prior to April 30, 1958, this being the date upon which each party would be released from further performance if Ultra-Violet's election to terminate the contract was effective. However, Black Light was still claiming damages for Ultra-Violet's refusal to render further performance under the contract, contending that the termination was wrongful and resulted in Black Light's loss of anticipatory profits. These issues were not reached during the trial, although the parties intended and were prepared to try them. This course of the trial occurred in the following manner. After evidence was introduced with respect to the manner in which the business had been conducted but before the questions of wrongful termination of the contract and damages were taken up, the court of its own motion suggested that the contract might be void for lack of mutuality in which case Ultra-Violet could properly have terminated the same at will. The point was argued in chambers and the court held the contract void in a memorandum which stated at length the court's reasons for its decision. Plaintiff made a comprehensive offer of proof that the termination of the contract by Ultra-Violet was wrongful in that Black Light had fully met all of its obligations thereunder and had suffered damage in the loss of anticipated profits. The court rejected the offer. Defendant dismissed its cross-complaint.

In this situation, the parties having reached an agreement settling their respective claims relative to all past transactions, and the court having ruled that the contract was terminable by Ultra-Violet at will, nothing remained other than the entry of judgment in favor of defendants, and judgment was entered accordingly. Findings having been waived, the judgment recited that the parties had reserved "the claim of the plaintiff for damages because of an alleged breach of contract by the defendant Ultra-Violet Products, Inc., a corporation, and the defense of said corporation thereto."

The question on the appeal is whether the contract of March 30, 1956, was void for want of mutuality in that Black Light's obligations did not constitute a consideration to Ultra-Violet. We have reached the conclusion that the contract was not void.

Plaintiff says it obligated itself to purchase during the remainder of the year 1956, $20,000 worth of Ultra-Violet products, and thereafter in each effective year of the contract $25,000 worth of the products. While that may have been the

intention of the parties, it was not expressed in the agreement. Plaintiff also says that it was bound by the contract through the first calendar year. This is true. And it correctly says that it was obligated unconditionally to maintain an adequate inventory to service all accounts in the territory but it is mistaken in saying that it agreed to purchase an inventory at a cost of $20,000. It points out that it agreed not to handle competitive products, with certain exceptions; to use its best efforts to promote the use of Ultra-Violet's products, then being offered by the latter, and not to handle new products such as Ultra-Violet might later produce, without ascertaining first the plans of Ultra-Violet with respect thereto. These obligations, it maintains, were of substantial value to Ultra-Violet. We agree.

In a special defense of Ultra-Violet, it was alleged that for several years prior to the execution of the written agreement the parties had been engaged in conduct of the business which was the subject of the contract. It was alleged, as grounds for termination of the contract, the reasons stated in defendant's notice of termination.

Defendant minimizes the promise to maintain an adequate inventory as if it had no meaning, and was a matter within the sole discretion of plaintiff, and for its benefit. We regard the promise as one that was definite, certain and of value to both parties. An adequate inventory of merchandise offered for sale would be one which was reasonably sufficient for display and the filling of orders without delay. It was developed in the examination of plaintiff's president under section 2055, Code of Civil Procedure, that a record was kept of the supplies of all defendant's products on hand and that the supply of each article was augmented regularly before it was exhausted.

Defendant, in its brief, singles out the promise of plaintiff to promote the sale of the products, contending that this was an indefinite and illusory promise of no tangible value, citing *Scott* v. *Cline Electric Mfg. Co.*, 104 Cal.App. 122 [285 P. 349]. But there was yet another promise made by plaintiff in addition to its maintaining an inventory. It agreed, for a calendar year, at least, not to sell competing products. It does not appear, as a matter of law, that that promise did not amount to substantial consideration. Defendant urged plaintiff's handling of competing products as a ground for termination of the contract, and a cause of damage to the business.

It will be for the trial court to decide in a retrial whether this promise of plaintiff, also, was of substantial value to defendant and whether it had been kept.

The trial court believed there is confusion in the California cases respecting the matter of mutuality, and suggested that the present case is one in which the law may be clarified. It is true that the courts have said, time and again, that if one of the parties to a purported contract may terminate his promises "at will," the agreement is void for lack of mutuality and the courts have not always said what they have meant by "at will." ■ The term means, and has been used to denote, a right to refuse to go forward where the party having the right has given no consideration, by a promise which, if kept, would confer a benefit upon the other party, and if broken, would give a cause for redress. ■ Mutual promises which are definite and of value furnish the element of mutuality. One who has not bound himself by such a promise has no contract, and can ask for nothing when he has given nothing.

The trial court gave too literal a construction to the statement that a purported contract is lacking in mutuality if one party can withdraw from it "at will." ■ Withdrawal "at will" means withdrawal without having given a consideration for the promises of the other party. The question of mutuality is merely one of consideration.

■ In its memorandum of decision the court made no mention of the matter of consideration, or of the obligations assumed by plaintiff. As we understand the court's view, it was that there must be equality in the right to terminate the agreement, and that this does not exist when one party can end the agreement only for cause and the other can terminate it for no cause except his own *desire*. Defendant, perforce, agrees with the trial court.

No case among those relied upon by the court, and no case cited by defendant, supports the court's view of the law.

We agree with the trial court that the term "at will" has been used loosely in some of the cases, but in all of them it was related to the absence of consideration. If there is mutuality of consideration, it matters not whether the right to withdraw is the same as to each party, or whether notice of withdrawal must be given in advance.

The cases relied upon by the trial court, and the additional cases cited by defendant, fall generally into one or the other

of two categories. In a third category must be placed those cases in which the court, having stated the rule of mutuality, found there was mutuality of consideration and hence validity.

In the first category are cases in which entering into a binding contract was optional with one of the parties, or where one party bound himself to perform and the other did not. (*Wooton* v. *McAdoo,* 110 Cal.App. 48 [293 P. 694]; *Shortell* v. *Evans-Ferguson Corp.,* 98 Cal.App. 650 [277 P. 519]; *Seymour* v. *Shaeffer,* 82 Cal.App.2d 823 [187 P.2d 95]; *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300 [266 P.2d 856].)

In a second class are cases in which the engagements of one party were so uncertain and nebulous as to confer no benefit and give no right of redress. (*Scott* v. *Cline Electric Mfg. Co., supra,* 104 Cal.App. 122, (the agreement was merely to "push" the products); *J. A. Folger & Co.* v. *Williamson,* 129 Cal.App. 2d 184 [276 P.2d 645]; *Hancock Oil Co.* v. *McClellan,* 135 Cal.App.2d 667 [288 P.2d 39]; *Sloan* v. *Stearns,* 137 Cal. App.2d 289 [290 P.2d 382]; *Chas. Brown & Sons* v. *White Lunch Co.,* 92 Cal.App. 457 [268 P. 490]; *County of Alameda* v. *Ross,* 32 Cal.App.2d 135 [89 P.2d 460].)

In the third class are *Clarey* v. *Security Portland Cement Co., Inc.,* 99 Cal.App. 783 [279 P. 483]; *Associated Oil Co.* v. *Myers,* 217 Cal. 297 [18 P.2d 668]; *Naify* v. *Pacific Indemnity Co.,* 11 Cal.2d 5 [76 P.2d 663, 115 A.L.R. 476]; *Hartman* v. *San Pedro Coml. Co.,* 66 Cal.App.2d 935 [153 P.2d 212]; *Brawley* v. *Crosby etc. Foundation, Inc.,* 73 Cal.App.2d 103 [166 P.2d 392]; *Fabbro* v. *Dardi & Co.,* 93 Cal.App.2d 247 [209 P.2d 91]; *Stone* v. *Burke,* 110 Cal.App.2d 748 [244 P.2d 51]; *Bartlett Springs Co.* v. *Standard Box Co.,* 16 Cal.App. 671 [117 P. 934]; *Thomas* v. *Anthony,* 30 Cal.App. 217 [157 P. 823].

In addition to the authorities which were relied upon by the court, defendant has cited to us many others, among them *E. I. DuPont De Nemours & Co.* v. *Claiborne-Reno Co.,* 64 F.2d 224, which is the subject of a note in 89 American Law Reports 238, and is referred to by defendant as a leading case on the subject. We can only say of this case, as of all of the others cited by defendant, that they adhere to the rule that with respect to mutuality, contracts are valid if there are definite covenants of value entered into by the respective parties and that they are void if one party or the other promises nothing.

All the cases relied upon by the court, and additional ones cited by defendant, support the contentions of plaintiff rather than those of defendant.

Plaintiff contends that there is yet another rule by which mutuality is judged, namely, "WHILE A PROVISION FOR TERMINATION BY ONE PARTY AT WILL RENDERS A CONTRACT ILLUSORY, A PROVISION FOR TERMINATION AFTER NOTICE FOR A FIXED PERIOD DOES NOT." For this proposition, plaintiff cites *Phalanx Air Freight* v. *National etc. Freight Corp.*, 104 Cal.App.2d 771 [232 P.2d 510], but plaintiff takes but a fragment of the court's statement, which reads as follows: "The contract contained a provision making it terminable by plaintiff 'at any time by giving Air Carrier at least thirty (30) days notice.' This did not render the contract illusory as contended by defendant. While a provision for termination by one party at will has that effect a provision for termination after notice for a fixed period does not. (*Brawley* v. *Crosby etc. Foundation, Inc.*, 73 Cal.App.2d 103, 113 et seq. [166 P.2d 392]; 1 Williston on Contracts, rev. ed., §105, p. 365; 17 C.J.S., Contracts, §100(g), p. 453.) Plaintiff bound itself to ship by defendant's planes 'all freight over which it has control' and it was bound to do this until notice of termination and for thirty days thereafter. It thus agreed to confer a benefit and suffer a prejudice which afforded consideration for defendant's promises to it. (Civ. Code, §1605.)" [P. 773.]

The fact that notice of termination is required does not create mutuality; it adds nothing to a contract that is not "otherwise valid." (*Meurer Steel Barrel Co., Inc.* v. *Martin* (3 Cir., 1924), 1 F.2d 687.) The decision in *Phalanx* applies the general rule; it does not purport to announce any other.

Defendant made a motion for summary judgment which was denied. It says in its brief: "EVEN ASSUMING THE DISTRIBUTORS AGREEMENT WAS EVER ENFORCEABLE AS TO EXECUTORY PROVISIONS, WHICH RESPONDENTS DENY, RESPONDENT HAS TERMINATED THE AGREEMENT AND SUMMARY JUDGMENT ON SUCH TERMINATION SHOULD HAVE BEEN GRANTED."

If the agreement was enforceable as to its executory provisions defendant's termination of the agreement was not conclusive of its right to terminate it. Upon this issue defendant filed an affidavit of its president, Mr. Warren, and two certain exhibits consisting of supposed purchases by

Black Light of products competitive with those of defendant. The affidavit refers to numerous answers by plaintiff to interrogatories propounded by defendant, the contents of said answers being unknown to us through any statement of the same or reference thereto. In an affidavit of Mr. Waidner, president of Black Light, the assertions of Mr. Warren's affidavit were substantially controverted.

Plaintiff says that defendant, not having appealed, cannot urge that summary judgment should have been entered in its favor. However, if we assume that upon plaintiff's appeal defendant may urge that notwithstanding the errors of which plaintiff complains, judgment in any event should have been entered in defendant's favor (Code Civ. Proc., § 956) it is clear that the court upon the record before it properly denied defendant's motion for summary judgment.

The judgment is reversed.

Ford, J., concurred.

A petition for a rehearing was denied October 9, 1961, and respondents' petition for a hearing by the Supreme Court was denied November 8, 1961.