Filed 1/27/22  Perez v. Public Storage CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CAROLINA PEREZ et al., | B305611 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC611584) |
| v. | |
| PUBLIC STORAGE, a Maryland Real Estate Investment Trust, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Carolyn B. Kuhl, Judge.  Affirmed.

Milstein Jackson Fairchild & Wade, Gillian L. Wade, Mayo L. Makarczyk; Baker Burton & Lundy, Brad N. Baker, and Albro L. Lundy for Plaintiffs and Appellants.

Willkie Farr & Gallagher, Simona A. Agnolucci, and Eduardo E. Santacana for Defendant and Respondent.

\* \* \* \* \* \*

Consumers who rented self-storage space also purchased policies to insure their stored goods from loss or damage. On behalf of a class, they have now sued the storage company for violating California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) on the ground that the rental contracts repeatedly and expressly requiring them to have insurance did not mean what they said, such that the consumers were duped into buying insurance that was not required by their contracts. The trial court rejected their claims as without merit. So do we. Accordingly, we affirm the judgment for the storage company.

### FACTS AND PROCEDURAL BACKGROUND

#### I.     Facts

As its name implies, Public Storage rents self-storage units to the public.

When a person rents a storage unit from Public Storage, he is confronted with two documents, as pertinent here. The first is the Insurance Addendum (Addendum). The Addendum states two times that the renter "is obligated . . . to insure his own goods" and must "maintain insurance that covers loss or damage for the personal property" stored in the unit. The Addendum also requires the renter to sign an acknowledgment in which Public Storage explains the consequence of not complying with this

2

obligation—namely, that "if [the renter] do[es] not have insurance . . . [he is] personally responsible for any loss or damage to [his] goods," and those goods are deemed to be stored "at [his] sole risk."[1]  The second document is the Lease/Rental Agreement (Lease).  Section six of the Lease mirrors the Addendum.  Like the Addendum, it states that the renter is "obligated under the terms of [the Lease] to insure his own goods."  Also like the Addendum, the Lease explains the consequence of not complying with this obligation—namely, that if the renter "does not obtain insurance coverage for the full value of [his] personal property stored in the [storage unit], [the renter]

---

[1]      In full, the insurance disclosure section of the Addendum provides:

> "[A]ll personal property is stored by Occupant at occupant's sole risk.  Occupant is solely responsible for insuring his own goods and understands that Owner will not insure Occupant's personal property and that Occupant is obligated under the terms of this lease/rental agreement to insure his own goods.
>
> "I acknowledge that I understand and agree to the provisions of the above paragraph and that I understand I am solely responsible to insure my stored property.  I acknowledge that the Lease/Rental Agreement requires me to maintain Insurance that covers loss or damage for the personal property that I intend to store at this facility. . . .  I understand that if I do not have Insurance, or if my Insurance lapses, I am personally responsible for any loss or damage to my goods.  I personally assume all risk of loss and Owner is not responsible no matter how the loss or damage occurred."

agrees [he] will personally assume all risk of loss."[2]  The Lease also provides that the "entire agreement" between Public Storage and the renter consists solely of the Lease and the Addendum (which is "executed at the same time as th[e] Lease[]").

Pursuant to Insurance Code section 1758.7 et seq., Public Storage also presents prospective renters with the option to apply for a third party insurance policy offered at Public Storage facilities to insure the goods they store in its units from loss or damage, and thereby to comply with the insurance obligation set forth in the Lease and the Addendum.  In discussing the insurance obligation, Public Storage employees are trained to follow a script approved by the California Department of Insurance that reiterates the insurance obligation of the Lease and the Addendum and introduces the offered insurance policy as

---

[2]      In full, this section of the Lease addressing insurance provides:

> INSURANCE; RELEASE OF LIABILITY.  ALL PERSONAL PROPERTY IS STORED BY OCCUPANT AT OCCUPANT'S SOLE RISK.  INSURANCE IS OCCUPANT'S SOLE RESPONSIBILITY.  OCCUPANT UNDERSTANDS THAT OWNER WILL NOT INSURE OCCUPANT'S PERSONAL PROPERTY AND THAT OCCUPANT IS OBLIGATED UNDER THE TERMS OF THIS LEASE/RENTAL AGREEMENT TO INSURE HIS OWN GOODS.  To the extent Occupant's insurance lapses or Occupant does not obtain insurance coverage for the full value of Occupant's personal property stored in the Premises, Occupant agrees Occupant will personally assume all risk of loss. . . . [signed initials] Occupant acknowledges that he understands the provisions of this paragraph and agrees to these provisions and that insurance is Occupant's sole responsibility."

4

one option for prospective renters to satisfy that obligation. However, it is up to each renter whether to apply for the policy offered by Public Storage, or instead to rely on their homeowner's insurance policy, renter's insurance policy, or some other policy.[3]

Nationwide, some 85 percent of first-time renters opt to purchase one of the third party policies offered by Public Storage.

Public Storage does not verify to see whether those renters who do not purchase a Public Storage-offered policy have otherwise secured the insurance coverage required by the Lease and the Addendum. That is because the Insurance Code's limited authorization for "self-service storage agents" like Public Storage to sell insurance does not empower them to "[a]dvertise, represent, or otherwise portray itself or its employees as licensed insurers, insurance agents, or insurance brokers" (Ins. Code, § 1758.78, subd. (b)), and because "evaluat[ing]" whether some other policy is "adequa[te]" is something that only an "insurance agent" or "insurance broker" may do (*Id.*, § 1758.76, subd. (b)(3)).

Because it cannot verify whether its renters' other policies are adequate, Public Storage does not cancel any rental contract due to the renter's failure to obtain insurance.

Between 2013 and 2016, Carolina Perez, Paulina Cardona, Guilliana Amico, and Richard Mojica (collectively, the named plaintiffs) all rented storage units at Public Storage locations in California and selected the insurance policy offered by Public Storage.

---

[3]     The trial court found that Public Storage made "no uniform misleading statements" that would lead a "reasonable person to believe that they were required to purchase" insurance from Public Storage, and this finding has not been appealed. We accordingly accept it as established.

5

## II.     Procedural Background

On February 24, 2016, the named plaintiffs filed a putative class action lawsuit against Public Storage.[4]  In the operative fourth amended complaint, plaintiffs asserted claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) violations of the unfair competition law for engaging in business practices that are fraudulent, unlawful, and unfair.

On May 3, 2018, the trial court certified a class (collectively, plaintiffs) on the theory that Public Storage made uniform misleading statements to prospective renters that induced them to believe that they were required to purchase a Public Storage-offered insurance policy.

In January 2019, the matter proceeded to a three-day bench trial on the unfair competition law claims on behalf of a class of approximately 700,000 renters.[5]  At trial, plaintiffs for the first time presented the theory that Public Storage had violated the unfair competition law by "telling its customers they were required to maintain some form of insurance on their stored goods despite the fact that there was no such requirement."  In support of this theory, plaintiffs relied on two categories of evidence.  First, they introduced a discovery response verified by one of Public Storage's executives, in which Public Storage

---

[4]     Perez filed the original complaint; the other named plaintiffs were added in each amended iteration of the complaint.

[5]     Plaintiffs' contract-based claims were obviated by the trial court's order denying class certification on plaintiff's proffered theory that Public Storage failed to disclose that it stood to gain from the insurance transaction.

6

admitted that (1) "since August 2006, Public Storage's Lease[] has required new [renters] to have some form of insurance coverage for the goods stored at Public Storage's facilities, whether or not they choose to purchase the tenant insurance provided at Public Storage," (2) renters "can satisfy this contractual requirement by having or obtaining various types of insurance, including but not limited to homeowners' insurance, renters' insurance, other self-storage insurance, or by bearing the risk of loss personally," and (3) the renter "assumes all risk of loss" if insurance is not obtained or is inadequate. Second, plaintiffs pointed to Public Storage's willingness to rent to people, even if they did not obtain or provide proof of insurance.

In June 2019, the trial court issued a 16-page statement of decision denying plaintiffs relief. The court rejected plaintiffs' initially pled theory that Public Storage had misled prospective renters into believing that they had to buy a Public Storage-offered insurance policy. The court then turned to plaintiffs' newly articulated theory that Public Storage did not *really* require tenants to obtain insurance. The court found that this theory was within the scope of the class notice, but ruled that it lacked merit. Based on the plain language of the Lease and the Addendum as well as the consistent testimony of all four Public Storage representatives that plaintiffs called as witnesses at trial, the court found that "Public Storage requires its customers to insure their goods in storage." The court rejected plaintiffs' argument that the insurance obligation in the Lease and the Addendum was "illusory." The court reasoned that the discovery response could not modify the plain language of the insurance obligation set forth in the Lease and the Addendum; even if it could, the court viewed the response as explaining the

7

consequence "if a person failed to obtain insurance" rather than as a "statement that renters need not comply with the [insurance obligation set forth in the] Lease . . . ." The court next found Public Storage's failure to verify renters' compliance with the insurance obligation to be a function of the limitations placed on it by the Insurance Code; further, the court noted that Public Storage had "discretion in how to enforce" the insurance obligation. Because Public Storage did require its renters to obtain insurance, the court concluded, Public Storage did not act fraudulently, unlawfully, or unfairly—and hence did not violate the unfair competition law—in telling renters that insurance was required.

After the named plaintiffs settled their individual claims and the trial court entered judgment, plaintiffs filed this timely appeal.

## DISCUSSION

Plaintiffs argue that the trial court erred in concluding that their unfair competition law claims lacked merit.[6] California's unfair competition law defines "unfair competition" as a "business act or practice" that is (1) "fraudulent," (2) "unlawful,"

---

[6] Plaintiffs also challenge the trial court's ruling prohibiting their experts from calculating restitution in a manner that violates the filed rate doctrine. That doctrine insulates an entity from civil damages arising from claims challenging rates charged by the entity if those rates have been filed with and approved by the governing regulatory authority. (See, e.g., *Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325, 334-335 [discussing doctrine as applied to telephone carrier].) This issue deals with damages, but we need not reach any remedy-related issues in light of our conclusion that there is no liability in the first place.

or (3) "unfair."  (Bus. & Prof. Code, § 17200; see *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; see also *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1196 [each ground is an independent basis for liability].)  On appeal, plaintiffs assert that Public Storage has engaged in fraudulent, unlawful, and unfair business practices because (1) the Lease and the Addendum, despite their provisions requiring renters to obtain insurance, do not *really* require them to do so, and (2) even if the Lease and the Addendum do mean what they say, Public Storage still deceived renters by not telling them that they can breach this provision without consequence because Public Storage does not verify compliance with the insurance obligation and will still rent storage units despite noncompliance with this obligation.

## I.     Is Insurance Required Under the Lease and the Addendum?

Plaintiffs' first argument—that the Lease and the Addendum do not really obligate renters to obtain insurance and are merely "advisory" on whether to obtain insurance—requires us to interpret those contracts.  Especially with integrated contracts like the Lease, our interpretation is limited to the face of the contract; however, we may consider parol (that is, extrinsic) evidence provisionally to assess whether the contract is "reasonably susceptible" to more than one interpretation and, if it is, use that parol evidence to determine the contract's meaning.  (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391; *Hot Rods, LLC v. Northrop Grumman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1175-1176.)  We independently construe the meaning of contractual terms and whether a contract is "reasonably susceptible" to multiple interpretations, but review

9

the trial court's resolution of any conflicts in the parol evidence for substantial evidence. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165-1166.)

We independently agree with the trial court that the Lease and the Addendum obligate renters to obtain insurance. Together, those documents expressly state—no fewer than three times—that renters are "obligated . . . to insure [their] own goods" and to "maintain . . . insurance." The text of a contract is the first place to look in interpreting its meaning; where, as here, the text is "clear and explicit," it is also the last place. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 (*Bank of the West*).)

Plaintiffs respond with three contentions.

First, plaintiffs contend that the plain language of the Lease and the Addendum are contradicted by (1) Public Storage's discovery response, where it admitted that renters can "satisfy" their "contractual requirement" by "bear[ing] the risk of loss personally" and "assum[ing] all risk of loss" (that is, by *not* having insurance), (2) Public Storage's failure to verify renters' compliance with the insurance obligation, and (3) Public Storage's inability or failure to terminate rental contracts or to sue their renters for not complying with the insurance obligation. Even if we assume that one or all of these items of evidence render the Lease and the Addendum "reasonably susceptible" to a reading contrary to their plain text, we conclude that the better reading is the one consistent with their plain text.

More generally, it is difficult to see how Public Storage's extracontractual discovery response explaining the insurance obligation can negate that obligation when contracts in California are construed according to their *objective* meaning (e.g., *Founding*

10

*Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956 ["[t]he parties' undisclosed intent or understanding is irrelevant to contract interpretation"]; *Pardee Construction Co. v. Insurance Co. of the West* (2000) 77 Cal.App.4th 1340, 1360 ["a party's subjective intent cannot be used to create an ambiguity in otherwise clear and explicit language"]), or how Public Storage's postcontractual conduct in deciding whether and how to enforce a contractual provision can retroactively negate that provision when contracts are to be interpreted "as to give effect to the mutual intention of the parties *as it existed at the time of contracting*" (Civ. Code, § 1636, italics added; *Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 437-438; *Bank of the West*, *supra*, 2 Cal.4th at pp. 1264-1265).

More specifically, none of the three items plaintiffs cite undermines the plain text of the Lease and the Addendum. The discovery response is not the smoking gun plaintiffs portray; instead, and as the trial court noted, the response largely parrots the text of the Lease and the Addendum—namely, that (1) insurance is required, but (2) the consequence of not complying with this requirement is personal liability for any loss. Thus, to the extent Public Storage's discovery response was an "unequivocal concession of the truth of a matter"—which it likely was not—the evidence at trial was not contrary to that admission. (See Code Civ. Proc., § 2033.410 ["[a]ny matter admitted in response to a request for admission is conclusively established against the party making the admission"]; *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746 [fact established as judicial admission made by a response to request for admission is a conclusive concession of the truth of that

11

matter]; *Monroy v. City of Los Angeles* (2008) 164 Cal.App.4th 248, 260 [trial court may utilize parol evidence "to elucidate and explain an admission" so long as such evidence does not "contradict the plain meaning of" the response].)[7]  And even if the response could be read another way, substantial evidence supports the trial court's reading.  Public Storage's failure to verify compliance is not evidence of a postcontractual abandonment of the insurance obligation because verification would require Public Storage to evaluate whether renters' alternative insurance policies were adequate to cover the goods in storage, and the Insurance Code *precludes* Public Storage from engaging in such evaluation.  (See Ins. Code, § 1758.76, subd. (b)(3) [self-storage facility must disclose to renter that "self-service storage facility and its employees are not qualified or authorized to evaluate the adequacy of the purchaser's existing insurance coverage"].)  And Public Storage's unwillingness to terminate rental agreements for failure to comply with the insurance obligation (even if the prospective tenant expresses an intent not to comply)—whether due to an inability to evaluate compliance or due to a conscious choice—does not somehow retroactively invalidate that obligation.  Accepting plaintiffs' logic means that a party's decision not to enforce the breach of a contractual provision means that the provision was never a contractual obligation in the first place.  This is nonsensical, and we may not construe contracts to lead to such absurdities.  (Civ. Code, § 1638; *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 831.)

---

[7]     Thus, contrary to what plaintiffs assert, the fact that Public Storage did not seek relief from its admission is of no concern.

12

Second, plaintiffs argue that Public Storage's failure to enforce the insurance obligation in the Lease and the Addendum renders that obligation "illusory." This argument rests on a misunderstanding of the term "illusory." A contract is illusory if "a party to a contract retains the unfettered right to terminate or modify the agreement"; in this situation, the party with the unfettered right has given no consideration, and *the contract* fails for lack of consideration. (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 15; *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 923 [contract that is "illusory" is one "lacking in consideration"].) Here, it is undisputed that the Lease and the Addendum *as a whole* are supported by consideration—namely, Public Storage rents a self-storage unit and renters pay for it. Thus, the Lease and the Addendum are not illusory. Notwithstanding the validity of the Lease and the Addendum as a whole, plaintiffs urge us to find that the insurance obligation specifically is unsupported by consideration and hence illusory. But "it is not necessary that each separate promise or covenant [in a contract] should have a distinct consideration." (*Brawley v. Crosby Research Foundation, Inc.* (1946) 73 Cal.App.2d 103, 118-119; *Tennant v. Wilde* (1929) 98 Cal.App. 437, 442.) Accordingly, we decline plaintiffs' invitation to shoehorn the facts of this case into the "illusory contract" doctrine.

Third, plaintiffs argue that Public Storage drafted the Lease and the Addendum, and that these contracts should be construed against them. (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 739.) This canon of contractual interpretation does not apply, however, where, as here, the plain text of the Lease and the Addendum is clear and unambiguous. (*Ibid.*)

13

## II. Even If Insurance *Is* Required, Must Public Storage Inform Renters Whether It Intends to Enforce That Requirement?

Plaintiffs' second argument—that, even if the Lease and the Addendum require renters to obtain insurance, Public Storage violated the unfair competition law by not telling renters that it would not (or could not) enforce that requirement—turns on the application of the law to undisputed facts. Our review is accordingly de novo. (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.)

To accept plaintiffs' argument, we would have to hold that a party to a contract commits an unfair business practice if it does not disclose, at the time it signs a contract, which of the contract's provisions it does not intend to enforce. Plaintiffs provide no legal support for this argument, nor have we found any. This is not surprising. People and businesses generally have the right to enter into a contract, *and* to decide not to sue for a subsequent breach of that contract. (See *Alder v. Drudis* (1947) 30 Cal.2d 372, 381-382 ["one who has been injured by a breach of contract" has three options, including "keep[ing] the contract alive, for the benefit of both parties"]; *Akin v. Certain Underwriters at Lloyd's London* (2006) 140 Cal.App.4th 291, 296 [party injured by a breach may treat the contract as rescinded or repudiated and recover damages if he "lacks the ability or the desire to keep the contract alive"].) As a consequence, we see no basis for requiring a party to a contract—on pains of incurring liability under the unfair competition law—to either enforce every provision of a contract or disclose their intention not to do so. This would constitute a vast—and, in our view, unwise—intrusion into the discretion parties to a contract historically and

14

typically enjoy regarding whether and how to seek remedies for a breach.

*　　*　　*

For these reasons, the trial court properly rejected plaintiffs' unfair competition law claims.  Because the Lease and the Addendum obligated renters to obtain insurance, Public Storage did not act in a fraudulent, unlawful, or unfair way in telling prospective renters that those contracts contained that obligation.  (See Ins. Code, § 1758.76, subd. (b)(1) [self-service storage employees may advise renter that the "facility's rental agreement may contain provisions requiring the renter to provide insurance on [that renter's] property in the storage unit"].)  And because there is no legal duty to disclose to contracting partners one's intention not to enforce certain provisions of that contract, Public Storage did not act in a fraudulent, unlawful, or unfair way in not telling prospective renters it was unable or unwilling to enforce the provision obligating them to obtain insurance.

15

## DISPOSITION

The judgment is affirmed.  Public Storage is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

16